UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>BALLY TOTAL FITNESS HOLDING CORPORATION,<br><br>    Defendant. | Civil Action No. 08-348 (HHK) |

**PLAINTIFF'S RESPONSE TO ORDER ENTERED MARCH 8, 2008**

Plaintiff, the United States Securities and Exchange Commission ("SEC") respectfully submits this response to the Order entered March 8, 2008.

**I.    INTRODUCTION**

For some time, the SEC has been investigating financial reporting fraud at Bally Total Fitness Holding Corp. ("Bally"). On February 28, 2008, the SEC commenced this civil action by filing a complaint accompanied by a proposed final judgment, which incorporated a consent executed by Bally. The proposed consent judgment settles only the SEC's action against the company, and the SEC's investigation into responsibility for Bally's fraudulent financial reporting is continuing. The details of that investigation remain non-public.

After carefully considering all of the relevant circumstances, the SEC has determined that settling with Bally at this time, on the terms and conditions set forth in the proposed final judgment and consent, is in the public's best interest. Bally had recently emerged from bankruptcy, and had been cooperative and had promptly commenced remedial action. It is also

important to note that Bally's consent incorporates Bally's pledge of cooperation with the SEC's continuing investigation.

## II.     THE PRINCIPLES OF LAW GOVERNING THE COURT'S REVIEW OF THE PROPOSED FINAL JUDGMENT

"The Supreme Court has long endorsed the propriety of the use and entry of consent judgments." SEC v. Randolph, 736 F.2d 525, 528 (9th Cir. 1984) (collecting cases). SEC consent judgments are the result of arm's length negotiations between two represented parties who are knowledgeable about the factual bases for their claims and defenses. E.g., SEC v. Canadian Javelin Ltd., 64 F.R.D. 648, 651 (S.D.N.Y. 1974) ("The SEC and the defendants have, through careful negotiation, worked out a settlement designed to ensure the defendants' compliance with the securities laws and to protect the public from further violation of those laws."). One of those parties -- the SEC -- is charged by Congress with enforcing the securities laws and protecting the public interest. Id. ("Congress has entrusted the SEC with the responsibility for protecting the public interest.")

We are mindful that in certain types of cases, Congress has imposed on courts the obligation to review proposed consent decrees or settlements for reasonableness. For example, the Tunney Act prescribes the procedures that must be followed when a court is asked to determine whether entry of an antitrust consent decree is "in the public interest." 15 U.S.C. § 16(e) (2008). Similarly, in class actions, Rule 23 of the Federal Rules of Civil Procedure requires the court to hold a hearing and determine whether a proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(1)(C).

No provision of the federal securities laws or of the civil rules requires any similar hearing with respect to a settlement reached between the SEC and a company or individual.

15 U.S.C. §§ 77t(b) & 78u(d)(1); see generally Fed. R. Civ. P.  The United States Court of Appeals for the District of Columbia Circuit has not, so far as we are aware, had occasion to address the principles of law that apply to a court's review of a consent judgment presented by the SEC and a private party.  Accordingly, we turn to precedent from other circuits and to principles of law derived from the D.C. Circuit's review of consent decrees in non-securities law cases.

SEC v. Randolph, 736 F.2d 525 (9th Cir. 1984), is instructive.  The district court in Randolph refused to enter a consent judgment presented by the SEC and a private party on the ground that the consent judgment was not in the public's best interest.  The Ninth Circuit reversed, holding that, although the decision to approve a settlement is entrusted to the district court's discretion, "unless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." 736 F.2d at 529.  The district court erred by substituting its judgment for that of the SEC: "the court should have deferred to the agency's decision that the decree is appropriate and simply ensured that the proposed settlement is reasonable." Id.  "The initial determination whether the consent decree is in the public interest is best left to the SEC and its decision deserves our deference.  The provisions of the proposed decree have an adequate deterrent effect for it to be in the best interest of the public.  Accordingly, we reverse the judgment of the district court, with directions to enter the consent decree." Id. at 530.  Accord, e.g., SEC v. Bennett, 889 F. Supp. 804, 809 (E.D. Pa. 1995) (following Randolph) ("In reviewing this proposed consent injunction, I am to pay substantial deference to the SEC's judgment in negotiating it . . .").

Randolph thus stands for the proposition that in exercising its discretion, the district court should accord the SEC's judgment substantial deference.  As discussed below, the D.C. Circuit, in non-securities cases, has endorsed the district court's according other federal agencies

substantial deference in reviewing proposed consent decrees under other federal statutes. Courts have identified at least four reasons for such deference.

First, reviewing an uncontested proposed consent judgment is a fundamentally different exercise than formulating relief in an adjudicated matter, or reviewing a consent decree that is contested by intervenors. In such cases, the court obtains by means of adversarial presentation the detailed factual knowledge necessary to soundly exercise broad discretion. That detailed factual knowledge is not acquired in the consent judgment context. Indeed, consent judgments are favored by federal courts precisely because they save litigants and courts the time and expense of adjudicating the parties' rights. Citizens for a Better Env't v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (Clean Water Act case). Accordingly, in reviewing a consent judgment (even when there are objecting intervenors) the court ought not to expend its resources to acquire that detailed knowledge: "The court's duty when passing upon a settlement agreement is fundamentally different from its duty in trying the case on the merits." Id. Indeed, "it is precisely the desire to avoid a protracted examination of the parties' legal rights which underlies consent decrees." Id. Thus, in reviewing a consent judgment, a district court lacks the detailed factual knowledge necessary to exercise broad discretion.[1]

---

[1] Because entry of an injunction (or other relief) as part of a consent judgment is a fundamentally different decision than the entry of an injunction (or other relief) in an adjudicated case, it is important to distinguish between cases involving entry of consent judgments and cases involving entry of injunctions (or other relief) in adjudicated matters. Principles applicable to adjudicated matters do not apply to the review of consent judgments. See SEC v. Lewis, 2007 WL 2022175, *1 (D.S.D. July 9, 2007) (attempting to apply principles applicable to adjudicated actions to the review of a consent judgment, but admitting that "because there has not been a finding by a trier of fact that the Defendant violated the securities laws, the Court is unable to consider the other factors cited by courts in determining the amount of a civil penalty to impose"); cf. SEC v. Globus Group, 117 F. Supp. 2d 1345, 1347 (S.D. Fla. 2000) (case had been at least partially adjudicated before the court modified the parties' consent judgment and entered it).

A second reason for according the SEC's judgment substantial deference is that the SEC is entrusted with acting in the public's interest and enters into consent judgments in the exercise of its specialized expertise.  E.g., Randolph, 736 F.2d at 530 ("The initial determination whether the consent decree is in the public interest is best left to the SEC and its decision deserves our deference"); SEC v. WorldCom, Inc., 273 F. Supp. 2d 431, 436 (S.D.N.Y. 2003) (approving agreed penalty amount, and stating "where one of the settling parties is a public agency, its determinations as to why and to what degree the settlement advances the public interest are entitled to substantial deference").

A third reason for according the SEC's judgment substantial deference is that consent judgments are vital to the SEC's ability to enforce the securities laws efficiently and economically, and any judicial changes to consent judgments would reduce or even eliminate their usefulness.  Each year, the SEC enters into numerous consent judgments in district courts.  The SEC, as enforcement authority, is uniquely situated to make decisions in individual cases based on its broad knowledge of enforcement priorities, available resources, and results in similar cases, as well as its specific knowledge of the considerations relevant to those individual cases.  E.g., Randolph, 736 F.2d at 529-30 ("The SEC's resources are limited, and that is why it often uses consent decrees as a means of enforcement."); Bennett, 889 F. Supp. at 809 ("Federal policy strongly favors the use of consent injunctions as a means of achieving efficiency in securities law enforcement."); see SEC v. Clifton, 700 F.2d 744, 748 (D.C. Cir. 1983) ("Because of its limited resources, the SEC has traditionally entered into consent decrees to settle most of its injunctive actions.").

As courts have recognized, in the context of SEC enforcement actions, any judicial changes to the terms of a consent judgment would introduce uncertainty into the negotiation

process and make consent judgments less attractive to both the SEC and private parties.  E.g., Canadian Javelin Ltd., 64 F.R.D. at 651 ("Moreover, we are not unmindful of the crucial part consent decrees play in the work of the SEC.  If we were to allow a private party to vacate such a decree on the flimsy bases put forth here by [third party seeking to intervene], consent decrees might be discouraged and the work of the SEC impeded.").  In this regard, it is important to note that the SEC seeks to maintain uniformity in the language of its consent decrees, and the consent decree in this case was created using language that is standard for SEC consent decrees.

     The D.C. Circuit has expressly refused to upset the delicate balance of advantages and concessions that lead the SEC and defendants to enter into consent judgments, explaining that although the SEC "gives up a number of advantages when it proceeds by injunction rather than by litigation, including the filing of findings of fact and court opinions clearly setting forth the reasons for the result in a particular case, the SEC is thus able to conserve its own and judicial resources; to obtain contempt remedies, including fines and prison terms, not available to it under its own statutory scheme; and to protect the public by informing potential investors that a certain person has violated SEC rules in the past and by reminding defendants that they must obey the law in the future."  Clifton, 700 F.2d at 748.  Further, although "defendants in such cases give up the right to contest the need for an injunction, they receive significant benefits in return:  they are permitted to settle the complaint against them without admitting or denying the SEC's allegations and they often seek and receive concessions concerning the violations to be alleged in the complaint, the language and factual allegations in the complaint, and the collateral, administrative consequences of the consent decree."  Id.

     The fourth and final reason for according the SEC's judgment substantial deference is that judicial review of consent judgments implicates constitutional concerns.  "Because the SEC is

charged with enforcing the securities laws, it acts as a law enforcement agency when it seeks to enjoin their violation." SEC v. Wang, 944 F.2d 80, 81 (2d Cir. 1991).  The SEC's decision to enter into a consent judgment -- like the analogous decisions by other agencies to enter into civil consent decrees -- involves the exercise of powers entrusted to enforcement authorities and thus, judicial involvement in deciding the terms of consent judgments directly implicates separation of powers concerns.  E.g., United States v. Microsoft Corp., 56 F.3d 1448, 1462 (D.C. Cir. 1995) (Tunney Act case) (reversing and remanding decision refusing to enter proposed consent decree, and instructing that in reviewing proposed consent decree, "a district judge must be careful not to exceed his or her constitutional role").

In particular, the Constitution is implicated when a court substitutes its judgment for that of an enforcement agency.  E.g., Microsoft, 56 F.3d at 1460.  Accordingly, the D.C. Circuit has instructed that when a district court is presented with a proposed consent decree, "the court can and should inquire . . . into the purpose, meaning, and efficacy of the decree.  If the decree is ambiguous, or the district judge can foresee difficulties in implementation, . . . the court [should] insist that these matters be attended to." Id. at 1462.  There is no warrant for rejecting or rewriting the decree unless it "appears to make a mockery of judicial power." Id.

### III.  REASONS WHY THE COURT SHOULD ENTER THE PROPOSED FINAL JUDGMENT

The consent judgment submitted in this case should be approved under either the D.C. Circuit's standard that a decree should be entered unless it "appears to make a mockery of judicial power," Microsoft, 56 F.3d at 1462, or the Ninth Circuit's standard that "unless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." Randolph, 736 F.2d at 529.  In determining whether a "proper showing" has been made, 15 U.S.C. §§ 77t(b) & 78u(d)(1), the

key inquiry is whether the consent judgment is "in the public interest," e.g., Randolph, 736 F.2d at 530, and as -- and for the reasons -- explained above, "[t]he initial determination whether the consent decree is in the public interest is best left to the SEC and its decision deserves our deference." Id.[2]

The SEC's investigation into the responsibility for Bally's financial fraud is continuing, however, in view of all the relevant circumstances, settling with Bally at this time on these terms and conditions is in the public interest because of Bally's financial condition, change of ownership, past cooperation, and pledge of cooperation with the SEC's continuing investigation. The proposed consent judgment adequately protects the investing public. It assists the SEC's on-going investigation by making Bally's continued cooperation a judicially enforceable obligation.

---

[2] We recognize that in the context of adjudicated cases, the phrase "proper showing" has been construed to mean that to obtain injunctive relief, the SEC need not meet the requirements of Fed. R. Civ. P. 65, but need only show (1) a past violation of the securities laws, and (2) a reasonable likelihood of a future violation of the securities laws. E.g., SEC v. Levine, 517 F. Supp. 2d 121, 147 (D.D.C. 2007) (Kennedy, J.). As discussed above, see supra at 4-5 & n.1, the principles applicable in adjudicated cases do not apply in the context of proposed consent judgments. See Lewis, 2007 WL 2022175, *1 (acknowledging the impossibility of applying principles applicable to adjudicated actions to the review of a consent judgment).

In particular, the "past violation" and "likelihood of future violation" tests cannot be applied in the context of a case resolved by consent judgment. In the context of a consent judgment, there is no proof of a past violation; indeed, the point of a consent judgment is to obviate the need for an adjudication of a "past violation." Gorsuch, 718 F.2d at 1126. Further, as the D.C. Circuit noted in Clifton, one of the benefits to defendants of entering into consent judgments with the SEC is to avoid "admitting . . . the SEC's allegations." 700 F.2d at 748. Thus, in the context of a consent judgment, there is neither proof nor admission of a "past violation."

Similarly, with respect to the "likelihood of a future violation," the complaint in a consent judgment case is unlikely to reflect all of the factual bases upon which the SEC determined to seek an injunction, because as the D.C. Circuit noted, such complaints often reflect "concessions concerning the violations to be alleged in the complaint, [and] the language and factual allegations in the complaint . . . ." Id. Further, the complaint would never reflect the other, broader, programmatic concerns that underlie the SEC's determination to seek an injunction.

- 9 -

Further, it is quite possible if not likely that Bally will seek to become publicly traded again, and the consent judgment protects the public by ensuring that Bally will be subject to the contempt powers of this Court if it were again to violate the securities laws delineated in the final judgment.

## CONCLUSION

For the foregoing reasons, the Court should enter the proposed final judgment.

Respectfully submitted,

_____/s/_____
Alan M. Lieberman
Robert E. Leidenheimer, Jr.
U.S. Securities & Exchange Commission
100 F. Street, N.E.
Washington, D.C. 20549
Tel.: 202-551-4474 (Lieberman)
Fax: 202-772-9245 (Lieberman)
Email: LiebermanA@sec.gov

Of Counsel:

Fredric D. Firestone
Kenneth R. Lench
David Kagan-Kans

Dated: March 28, 2008

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 28, 2008, the foregoing was served by the Court's ECF system upon counsel for defendant.

 

                                                        _____/s/_____
                                                   Alan M. Lieberman
                                       Assistant Chief Litigation Counsel